IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PETER ROSENFELD, an individual.

     Plaintiff,

v.

AEROVANTI, INC., a Delaware for-profit corporation, AEROVANTI AVIATION, LLC, a Delaware limited liability company, AEROVANTI AIRCRAFT, LLC, a Delaware limited liability company, AEROVANTI CAPITAL, LLC, a Delaware limited liability company, AEROVANTI MAINTENANCE, LLC, a Delaware limited liability company, AEROVANTI HANGAR, LLC, a Maryland limited liability company, AEROVANTI HANGAR, LLC, a Florida limited liability company, AEROVANTI BROKERAGE, INC., a Florida for-profit corporation, TOMBSTONE HOLDINGS, LLC, a Delaware limited liability company, BENJAMIN RICKETTS, an individual, PATRICK TORMAY BRITTON-HARR, an individual.

     Defendants.

CASE NO.: 8:23-cv-01893

## VERIFIED COMPLAINT

Plaintiff, PETER ROSENFELD, an individual ("Plaintiff"), hereby sues Defendants, AEROVANTI, INC., a Delaware for-profit corporation, AEROVANTI AVIATION, LLC, a Delaware limited liability company, AEROVANTI AIRCRAFT, LLC, a Delaware limited liability company, AEROVANTI CAPITAL, LLC, a Delaware limited liability company, AEROVANTI MAINTENANCE, LLC, a Delaware limited liability company, AEROVANTI HANGAR, LLC, a Maryland limited liability company, AEROVANTI HANGAR, LLC, a Florida limited liability company, AEROVANTI BROKERAGE, INC., a Florida for-profit corporation, TOMBSTONE HOLDINGS, LLC, a Delaware limited liability company, BENJAMIN RICKETTS, an individual,  and PATRICK TORMAY BRITTON-HARR, an individual (collectively "Defendants") and alleges as follows:

## PARTIES

1.     Plaintiff, PETER ROSENFELD (hereinafter, "ROSENFELD"), is an individual, and is, and was at all relevant times hereto, a resident of Broward County, Florida, and is otherwise *sui juris*.

2.     Defendant, AeroVanti, Inc. (hereinafter, "AEROVANTI"), is, and was at all relevant times hereto, a corporation organized and existing under the laws of Delaware, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401, and with its headquarters located in Sarasota,

Florida.[1] Despite AEROVANTI having its principal place of business address located in Annapolis, Maryland, AEROVANTI is, and was at all times relevant hereto, not registered as a foreign corporation authorized to conduct business in the State of Maryland. In like manner, despite AEROVANTI being, and at all relevant times hereto having been, headquartered in the State of Florida, AEROVANTI is, and was at all times relevant hereto, not registered as a foreign corporation authorized to conduct business in the State of Florida.

3.      Defendant, AeroVanti Aviation, LLC (hereinafter, "AEROVANTI AVIATION"), is, and was at all relevant times hereto, a defunct limited liability company organized and existing under the laws of Delaware, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401. AEROVANTI AVIATION currently remains, and at all relevant times hereto having remained, administratively dissolved or otherwise not in good standing with the State of Delaware Division of Corporations.

4.      Defendant, AeroVanti Aircraft LLC (hereinafter, "AEROVANTI AIRCRAFT"), is, and was at all relevant times hereto, a limited liability company organized and existing under the laws of Delaware, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

5.      Defendant, AeroVanti Capital, LLC (hereinafter, "AEROVANTI CAPITAL"), is, and was at all relevant times hereto, a limited liability company

---

[1] https://www.aerovanti.com/aerovanti-club-announces-up-to-100m-aircraft-funding-vehicle/

organized and existing under the laws of Delaware, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

6.      Defendant, AeroVanti Maintenance, LLC (hereinafter, "AEROVANTI MAINTENANCE"), is, and was at all relevant times hereto, a limited liability company organized and existing under the laws of Delaware, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

7.      Defendant, AeroVanti Hangar, LLC (hereinafter, "AEROVANTI HANGAR-MD"), is, and was at all relevant times hereto, a limited liability company organized and existing under the laws of Maryland, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

8.      Defendant, AeroVanti Hangar, LLC (hereinafter, "AEROVANTI HANGAR-FL"), is, and was at all relevant times hereto, a limited liability company organized and existing under the laws of Florida, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

9.      Defendant, AeroVanti Brokerage, Inc. (hereinafter, "AEROVANTI BROKERAGE"), is, and was at all relevant times hereto, a corporation organized and existing under the laws of Florida, with its principal place of business address located at 8191 N. Tamiami Trail, Suite 104, Sarasota, Florida 34243.

10.     Defendant, Tombstone Holdings, LLC d/b/a Tombstone Holdings, Inc. and/or Tombstone Holdings, LLC (collectively hereinafter, "TOMBSTONE HOLDINGS"), is, and was at all relevant times hereto, a corporation organized and

existing under the laws of Delaware, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

11. Defendant, Patrick Tormay Britton-Harr (hereinafter, "BRITTON-HARR"), is an individual, and is, and was at all relevant times hereto, a founding member, corporate officer, director, and/or principal of: AEROVANTI; AEROVANTI AVIATION; AEROVANTI AIRCRAFT; AEROVANTI CAPITAL; AEROVANTI MAINTENANCE; AEROVANTI HANGAR-MD; AEROVANTI HANGAR-FL; AEROVANTI BROKERAGE; and TOMBSTONE HOLDINGS, and is, upon information and belief, a resident of Sarasota County, Florida, and is otherwise *sui juris*.

12. Defendant, Benjamin Ricketts (hereinafter, "RICKETTS"), is an individual, and is, and was at all relevant times hereto, a corporate officer, director, and/or principal of: AEROVANTI; AEROVANTI AVIATION; AEROVANTI AIRCRAFT; AEROVANTI CAPITAL; AEROVANTI MAINTENANCE; AEROVANTI HANGAR-MD; AEROVANTI HANGAR-FL; and AEROVANTI BROKERAGE, and is, upon information and belief, a resident of Miami-Dade County, Florida, and is otherwise *sui juris*.

13. Defendants, AEROVANTI AVIATION, AEROVANTI AIRCRAFT, AEROVANTI CAPITAL, AEROVANTI MAINTENANCE, AEROVANTI HANGAR-MD, AEROVANTI HANGAR-FL, AEROVANTI BROKERAGE, and TOMBSTONE HOLDINGS are sometimes collectively referred to herein as the "ALTER-EGO DEFENDANTS".

## JURISDICTION AND VENUE

14.   This Court has general and specific jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the Plaintiff and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

15.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2), (b) and (c), as Defendants operated, conducted, engaged in, or carried on a business or business venture(s) in this District; engaged in substantial and not isolated business activities in this District; and committed tortious acts within this District, each tortious act being specifically alleged herein.

16.   All conditions precedent to this filing of this suit have been performed or have occurred.

## GENERAL ALLEGATIONS

17.   This action is the result of a calculated and continuing scheme undertaken by Defendant, BRITTON-HARR, and his network of affiliated companies to sell private aviation memberships and otherwise defraud unsuspecting members out of their money.

18.   Defendant, BRITTON-HARR, through Defendant, AEROVANTI, and its network of sham companies/ALTER-EGO DEFENDANTS, advertise and promote private aviation membership(s) under the guise of a tiered membership-based platform.

19.    Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, solicit potential new members to purchase an individual, family, corporate, or "top gun" membership to "AeroVanti's Elite Air Club".

20.    In their representations to potential new members, including Plaintiff, Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, embellished the business stature of Defendant, AEROVANTI, by exaggerating the rapid growth of new members, the number of aircrafts in its "fleet", and the significant amount of investor led funding received to support expansion and allow Defendant, AEROVANTI, to rapidly scale in order to meet customer demand. [2]

21.    Notably, in their representations to potential new members, including Plaintiff, Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, promoted and advertised that more than one hundred million dollars ($100,000,000.00)(inclusive of a Series A) was raised for the purpose of allowing a "significant fleet expansion" in order to "keep its member-to-aircraft ratio lower than the industry average without sacrificing any of the luxury one expects with private travel". [3]

---

[2]    https://www.aerovanti.com/aerovanti-names-former-piaggio-america-chief-executive-paolo-ferreri-as-interim-coo/) (March 2, 2023).

[3]    https://www.aerovanti.com/aerovanti-club-announces-up-to-100m-aircraft-funding-vehicle/

22.     New members, including Plaintiff, relied on the representations made by Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, in purchasing an individual, family, corporate, or "top gun" membership in AeroVanti's Elite Air Club, only to then discover that the representations made to new members, including Plaintiff, were nothing more than a mirage.

23.     To that end, despite representations by Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS to the contrary, the significant number of aircrafts being maintained in the "fleet" of Defendant, AEROVANTI, was actually comprised of no more than three (3) aircrafts deemed to be airworthy at any such time.

24.     Moreover, Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, further advertised and promoted the "top gun" membership as being a limited AeroVanti Elite Air Club membership ("*Top Gun Membership*").

25.     Conversely, upon purchasing a "Top Gun" Membership in reliance on the representations by Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, new members, including Plaintiff, soon discovered that the "host of benefits" associated with the "Top Gun" Membership were too an illusion.

26.     Upon information and belief, and despite Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS,

having received in excess of forty million dollars ($40,000,000.00) from the individual members known to have purchased the "Top Gun" Membership from AEROVANTI, the vast majority of the funds received by AEROVANTI, if not all, were used for an improper purpose at the direction of Defendant, BRITTON-HARR.

27.    Upon information and belief, as a result of the funds received in connection with the "Top Gun" Membership having been used for an improper purpose at the direction of Defendant, BRITTON-HARR, all of the aircrafts being maintained in the "fleet" of Defendant, AEROVANTI, have either since been repossessed and/or deemed not to be airworthy.

28.    Upon information and belief, as a result of the aircrafts being maintained in the "fleet" of Defendant, AEROVANTI, having since been repossessed and/or deemed not to be airworthy, and further, as a result of all employes of Defendant, AEROVANTI, having since been furloughed, Defendant, AEROVANTI, is in essence no longer operational.

29.    However, despite having defrauded hundreds of members, and further refusing to refund members the previously tendered "Top Gun" membership fee, Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, continued to expend member funds on partnership deals with professional sports organizations and on sponsorships for professional sporting events, all in an effort to further embellish the business stature and company health of Defendant, AEROVANTI, and by way of gross

misrepresentations, lure unsuspecting new members to purchase memberships in furtherance of the calculated and continuing scheme by Defendant, AEROVANTI.

30.    Prior to instituting this action and based on the discovery of the fraudulent misrepresentations made on behalf of Defendant, AEROVANTI, its agents and network of sham companies/ALTER-EGO DEFENDANTS, Plaintiff requested for a rescission of their respective AeroVanti Top Gun Member Agreement and return of the amounts previously tendered by Plaintiff in connection therewith, to no avail.

31.    All conditions precedent to the filing and maintenance of the causes of actions asserted herein have occurred, have been waived, or have been discharged or otherwise satisfied.

32.    PLAINTIFF has retained the undersigned firm of the WLG Firm, PLLC and has incurred attorneys' fees and costs for which he is entitled to be reimbursed from Defendants as provided by Florida Statutes and Florida case law.

### COUNT I - PIERCING THE CORPORATE VEIL[4]
### (PLAINTIFF AGAINST ALTER-EGO DEFENDANTS)

Plaintiff seeks a declaratory judgment determining that Defendants, AEROVANTI AVIATION, AEROVANTI AIRCRAFT, AEROVANTI CAPITAL, AEROVANTI MAINTENANCE, AEROVANTI HANGAR-MD, AEROVANTI HANGAR-FL, AEROVANTI BROKERAGE, and TOMBSTONE HOLDINGS (collectively, the "ALTER-EGO DEFENDANTS") are the alter-ego of Defendant, AEROVANTI, and alleges that:

---

[4] *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1117 (Fla. 1984).

33.    Plaintiff re-alleges and incorporate by reference paragraphs 1-32 as if fully set forth herein.

34.    Upon information and belief, Defendant, BRITTON-HARR, has developed an intricate web of deceit through the creation of interrelated entities that are each alter egos of one another.

35.    Upon information and belief, Defendant, BRITTON-HARR, uses the ALTER-EGO DEFENDANTS to insulate both Defendant, AEROVANTI, and Defendant, BRITTON-HARR, from any such liability.

36.    Upon information and belief, Defendant, BRITTON-HARR, owns, operates, dominates, and controls the ALTER-EGO DEFENDANTS to such an extent that they have no corporate existence independent of Defendant, AEROVANTI, and Defendant, BRITTON-HARR, their alter-ego.

37.    At all times relevant hereto, Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS have common ownership, as Defendant, BRITTON-HARR, solely owns or maintains an ownership interest in Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS.

38.    At all times relevant hereto, Defendant, BRITTON-HARR, caused the incorporation and/or formation of Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS, as Defendant, BRITTON-HARR, is the authorized signatory on all of the state filings for Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS.

39.    At all times relevant hereto, Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS have common directors or officers, as Defendant, BRITTON-HARR, is a corporate officer, director, and/or principal of Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS.

40.    At all times relevant hereto, Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS share principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

41.    At all times relevant hereto, Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS share the same email address domain of "@aerovanti.com".

42.    At all times relevant hereto, Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS share the same website domain of "www.aerovanti.com".

43.    At all times relevant hereto, Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS share the same company logo, which depicts a golden goose with company name "AEROVANTI" underneath.

44.    At all times relevant hereto, the daily business operations of Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS are not kept separate.

45.    At all times material hereto, the ALTER-EGO DEFENDANTS do not observe corporate formalities such as keeping separate books and records, holding shareholder meetings).

46.    At all times relevant hereto, there is a lack of any independent business derived from the ALTER-EGO DEFENDANTS except that of which is inextricably

intertwined with or handed down from Defendant, AEROVANTI, and/or Defendant, BRITTON HARR.

47.    At all times relevant hereto, funds and assets are commingled between Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS.

48.    As set forth herein, Defendant, BRITTON-HARR, operates, dominates, and controls Defendant, AEROVANTI, and each of the ALTER-EGO DEFENDANTS as a single business entity to such an extent that the ALTER-EGO DEFENDANTS' existence was in effect, non-existent.

49.    Defendant, BRITTON-HARR, as set forth herein, used the corporate form of the ALTER-EGO DEFENDANTS for an improper purpose and as mere devices to engage in improper conduct to obtain a financial benefit to the detriment of Plaintiff.

50.    Moreover, upon information and belief, the ALTER-EGO DEFENDANTS, individually, likely do not maintain sufficient assets to pay any such monetary judgment award in favor of Plaintiff.

51.    All things considered, allowing the corporate form of the ALTER-EGO DEFENDANTS to insulate Defendant, BRITTON-HARR, and Defendant, AEROVANTI, in any way from liability would sanction an injustice against Plaintiff.

**WHEREFORE**, Plaintiff, demands a declaratory judgment that the ALTER-EGO DEFENDANTS  are alter-egos of Defendant, AEROVANTI, and Defendant, BRITTON-HARR, respectively, and therefore declare the ALTER-EGO DEFENDANTS, Defendant, AEROVANTI, and Defendant, BRITTON-HARR, jointly and severally liable for any such monetary judgment awarded against the ALTER-

EGO DEFENDANTS, Defendant, AEROVANTI, and Defendant, BRITTON-HARR and in favor of Plaintiff, for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

**COUNT II - BREACH OF CONTRACT[5]**

**(ROSENFELD against AEROVANTI AVIATION and BRITTON-HARR)**

Plaintiff, ROSENFELD, sues Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, and alleges that:

52.    This is an action for damages that are within the jurisdiction of this Court.

53.    Plaintiff re-alleges and incorporates by reference paragraphs 1-32 as if fully set forth herein.

54.    Plaintiff, ROSENFELD, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Membership Agreement and corresponding Top Gun Addendum to the AeroVanti Membership Agreement on March 31, 2023, with an Effective Date of October 1, 2023 (collectively hereinafter, "*AeroVanti Rosenfeld Top Gun Agreement*"); a copy of the AeroVanti Rosenfeld Top Gun Agreement is attached hereto as Composite Exhibit "1".

55.    On March 31, 2023, the AeroVanti Rosenfeld Top Gun Agreement was executed by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

56.    Upon information and belief, and at all relevant times hereto, Defendant, AEROVANTI AVIATION, was a defunct limited liability company and was no longer

---

[5] *T.T. International Co., Ltd v. BMP Int', Inc.*, 2022 WL 971950, *10-11 (M.D. Fla. Mar. 31, 2022)

in good standing with the State of Delaware Division of Corporations at the time the AeroVanti Rosenfeld Top Gun Agreement was executed on behalf of Defendant, AEROVANTI AVIATION, by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

57.   In connection with the AeroVanti Rosenfeld Top Gun Agreement, Plaintiff, ROSENFELD, purchased a "Top Gun" membership from Defendant, AEROVANTI, for a total of seventy-five thousand dollars ($75,000.00).

58.   Pursuant to the terms and conditions of the AeroVanti Rosenfeld Top Gun Agreement, and in consideration of Plaintiff, ROSENFELD, having agreed to purchase a "Top Gun" membership, Defendant, AEROVANTI AVIATION, represented, and further agreed, that Defendant, AEROVANTI AVIATION, was a limited liability company organized under the laws of the State of Delaware, that Defendant, AEROVANTI AVIATION, was in good standing and at all relevant times hereto had the corporate authority to enter into the AeroVanti Rosenfeld Top Gun Agreement.

59.   Pursuant to the terms and conditions of the AeroVanti Rosenfeld Top Gun Agreement, and in consideration of Plaintiff, ROSENFELD, having agreed to purchase a "Top Gun" membership, Defendant, AEROVANTI AVIATION, represented, and further agreed, to provide Plaintiff, ROSENFELD, with priority access to private flights on aircrafts owned or leased by Defendant, AEROVANTI.

60.   Pursuant to the terms and conditions of the AeroVanti Rosenfeld Top Gun Agreement, and in consideration of Plaintiff, ROSENFELD, having agreed to

purchase a "Top Gun" membership, Defendant, AEROVANTI AVIATION, represented, and further agreed, to provide Plaintiff, ROSENFELD, with access to Defendant, AEROVANTI's concierge services and other membership benefits.

61.     Pursuant to the terms and conditions of the AeroVanti Rosenfeld Top Gun Agreement, and in consideration of Plaintiff, ROSENFELD, having agreed to purchase a "Top Gun" membership, Defendant, AEROVANTI AVIATION, represented, and further agreed, to provide Plaintiff, ROSENFELD, with access to Defendant, AEROVANTI's website to request flights and conduct other member activities.

62.     Pursuant to the terms and conditions of the AeroVanti Rosenfeld Top Gun Agreement, and in consideration of Plaintiff, ROSENFELD, having agreed to purchase a "Top Gun" membership, Defendant, AEROVANTI AVIATION, represented, and further agreed, to maintain at least twenty-five million dollars ($25,000,000.00) combined single limit liability insurance coverage, including passenger liability, public liability, contractual liability, property damage liability coverage, personal injury coverage and war risk liability coverage.

63.     Pursuant to the terms and conditions of the AeroVanti Rosenfeld Top Gun Agreement, and in consideration of Plaintiff, ROSENFELD, having agreed to purchase a "Top Gun" membership, Defendant, AEROVANTI AVIATION, represented, and further agreed, that if Plaintiff notified Defendant, AEROVANTI AVIATION, of Plaintiff's desire to cancel the AeroVanti Rosenfeld Top Gun Agreement within seven (7) days from the Effective Date, Defendant, AEROVANTI

AVIATION, shall refund Plaintiff the full amount tendered for the "Top Gun" Membership.

64.     Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Rosenfeld Top Gun Agreement, as Defendant, AEROVANTI AVIATION, was a defunct limited liability company and was no longer in good standing with the State of Delaware Division of Corporations at the time the AeroVanti Rosenfeld Top Gun Agreement was executed on behalf of Defendant, AEROVANTI AVIATION, by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

65.     Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Rosenfeld Top Gun Agreement, as all of the aircrafts being maintained in the "fleet" of Defendant, AEROVANTI, have either since been repossessed and/or deemed not to be airworthy, and as a result, Defendant, AEROVANTI, has no intent and/or ability to provide Plaintiff, ROSENFELD, with priority access to private flights on aircrafts owned or leased by Defendant, AEROVANTI.

66.     Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Rosenfeld Top Gun Agreement, as Defendant, AEROVANTI, has no intent and/or ability to provide Plaintiff, ROSENFELD, with access to Defendant, AEROVANTI's concierge services and other membership benefits, as Defendant, AEROVANTI, is no longer operational.

67.     Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Rosenfeld Top Gun Agreement, as Defendant, AEROVANTI, has no intent and/or ability to provide Plaintiff, ROSENFELD, with access to Defendant, AEROVANTI's

website to request flights and conduct other member activities, as Defendant, AEROVANTI, is no longer operational.

68.     Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Rosenfeld Top Gun Agreement, as Defendant, AEROVANTI, failed to maintain at least twenty-five million dollars ($25,000,000.00) combined single limit liability insurance coverage.

69.     Plaintiff, ROSENFELD, previously sent Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, a Notice of Rescission and Formal Demand Letter on July 21, 2023 whereby requesting a refund of the full amounts previously tendered by Plaintiff for the "Top Gun" Membership, in accordance with the terms of the AeroVanti Rosenfeld Top Gun Agreement, to no avail; a copy of the Formal Demand Letter is attached hereto as Exhibit "2".

70.     Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Rosenfeld Top Gun Agreement, as Defendant, AEROVANTI, failed to refund the full amounts previously tendered by Plaintiff for the "Top Gun" Membership, despite Defendant, AEROVANTI, having received the Formal Notice of Rescission on April 24, 2023, which was well within the proscribed cancellation date, as the Effective Date of the AeroVanti Rosenfeld Top Agreement was October 1, 2023.

71.     As a direct and proximate result of Defendant, AEROVANTI AVIATION, and Defendant, BRITTON-HARR, having materially breached the AeroVanti

Rosenfeld Top Gun Agreement beyond the point of any such ability to cure, Plaintiff, ROSENFELD, has suffered damages, and continues to suffer damages.

72.    Moreover, due to Defendant, BRITTON-HARR, operating Defendant, AEROVANTI AVIATION, Defendant, AEROVANTI AIRCRAFT, Defendant, AEROVANTI, and each of the ALTER-EGO DEFENDANTS as a single business entity Plaintiff, ROSENFELD, asserts this claim against all the Alter Ego Defendants.

**WHEREFORE**, Plaintiff, ROSENFELD, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, AEROVANTI, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## COUNT III - FRAUDULENT MISREPRESENTATION[6]
### (ROSENFELD against AEROVANTI, ALTER-EGO DEFENDANTS and BRITTON-HARR)

Plaintiff, ROSENFELD, sues Defendants, AEROVANTI, the ALTER-EGO DEFENDANTS, and BRITTON-HARR, jointly and severally, and alleges that:

73.    This is an action for damages that are within the jurisdiction of this court.

74.    Plaintiff re-alleges and incorporates by reference paragraphs 1-32 as if fully set forth herein.

---

[6] *Metropolitan Life Ins. Co. v. Liebowitz*, 2022 WL 833635, *9 (M.D. Fla. Mar. 21, 2022);

75.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further advertised and promoted the "top gun" membership as being a limited AeroVanti Elite Air Club membership ("*Top Gun Membership*").

76.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that Defendant, AEROVANTI, maintained a significant number of aircrafts in its "fleet" in order to satisfy the demands of "top gun" members.

77.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that Defendant, AEROVANTI, raised more than one hundred million dollars ($100,000,000.00) (inclusive of a Series A) for the purpose of allowing a "significant fleet expansion" to satisfy growing "top gun" member demands.

78.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that purchase of a "Top Gun" Membership would provide Plaintiff with priority access to private flights on aircrafts owned or leased by Defendant, AEROVANTI.

79.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that purchase of a "Top Gun" Membership would provide Plaintiff with access to Defendant, AEROVANTI's concierge services and other membership benefits.

80.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and

expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase a "Top Gun" Membership and enter into the AeroVanti Rosenfeld Top Gun Agreement.

81.   Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase a "Top Gun" Membership and enter into the AeroVanti Rosenfeld Top Gun Agreement.

82.   The representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, were false when they were made to Plaintiff.

83.   The false and fraudulent representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS were material to Plaintiff's decision to purchase a "Top Gun" Membership and enter into the AeroVanti Rosenfeld Top Gun Agreement.

84.   If  Plaintiff had known that the actual number of aircrafts in Defendant, AEROVANTI's "fleet", or that Defendant, AEROVANTI,  did not have the capacity to meet, let alone satisfy, growing Top Gun Member demands, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid a total of seventy-five thousand dollars ($75,000.00) to purchase a "Top Gun" Membership, nor enter into the AeroVanti Rosenfeld Top Gun Agreement.

85.    As a direct and proximate result of the false and fraudulent representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff, ROSENFELD, has suffered damages, and continues to suffer damages.

**WHEREFORE**, Plaintiff, ROSENDFELD, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, AEROVANTI, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## COUNT IV - RESCISSION[7]

### (ROSENFELD against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiff, ROSENFELD, sues Defendants, AEROVANTI AVIATION and BRITTON-HARR, and alleges that:

86.    This is an action for damages that are within the jurisdiction of this court.

87.    Plaintiff re-alleges and incorporates by reference paragraphs 1-32 as if fully set forth herein.

88.    Plaintiff, ROSENFELD, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Membership Agreement and corresponding Top Gun Addendum to the AeroVanti Membership Agreement on March 31, 2023, with an Effective Date of October 1, 2023 (collectively hereinafter, "*AeroVanti Rosenfeld Top*

---

[7] *Perna v. Am. Campus Cmtys, Inc.*, 2022 WL 1689083, *3-5 (M.D. Fla. May 26, 2022);

*Gun Agreement*"); a copy of the AeroVanti Rosenfeld Top Gun Agreement is attached hereto as Composite Exhibit "1".

89.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that Defendant, AEROVANTI, maintained a significant number of aircrafts in its "fleet" in order to satisfy the demands of "top gun" members.

90.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that Defendant, AEROVANTI, raised more than one hundred million dollars ($100,000,000.00) (inclusive of a Series A) for the purpose of allowing a "significant fleet expansion" to satisfy growing "top gun" member demands.

91.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that purchase of a "Top Gun" Membership would provide Plaintiff with priority access to private flights on aircrafts owned or leased by Defendant, AEROVANTI.

92.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that purchase of a "Top Gun" Membership would provide Plaintiff with access to Defendant, AEROVANTI's concierge services and other membership benefits.

93.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would

induce Plaintiff to purchase a "Top Gun" Membership and enter into the AeroVanti Rosenfeld Top Gun Agreement.

94. Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase a "Top Gun" Membership and enter into the AeroVanti Rosenfeld Top Gun Agreement.

95. Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff.

96. If Plaintiff had known that the actual number of aircrafts in Defendant, AEROVANTI's "fleet", or that Defendant, AEROVANTI, did not have the capacity to meet, let alone satisfy, growing Top Gun Member demands, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid a total of seventy-five thousand dollars ($75,000.00) to purchase a "Top Gun" Membership, nor enter into the AeroVanti Rosenfeld Top Gun Agreement.

97. As a result of Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, having made false and fraudulent statements to Plaintiff, and Plaintiff having justifiably relied thereon to Plaintiff's detriment, and further, due to all of the aircrafts being maintained in the "fleet" of Defendant, AEROVANTI, having either since been repossessed and/or deemed not to be airworthy, whereby making both the purpose of Plaintiff's "Top Gun" Membership,

as well as Plaintiff's actual ability to utilize priority access to private flights on aircrafts owned or leased by Defendant, AEROVANTI, impossible.

98.   Upon discovering the acts of fraud, deceit and/or omissions by AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff sought to rescind the AeroVanti Rosenfeld Top Gun Agreement.

99.   In doing so, Plaintiff notified Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR of such rescission and requested the return of the funds delivered to Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR in connection with the AeroVanti Rosenfeld Top Gun Agreement.

100.   However, Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR have failed and further refused to return the monies it received from Plaintiff in connection with the AeroVanti Rosenfeld Top Gun Member Agreement.

101.   Plaintiff has no adequate legal remedy at law except for a rescission of the AeroVanti Rosenfeld Top Gun Agreement.

**WHEREFORE**, Plaintiff, ROSENFELD, respectfully demands a judicial declaration by this Honorable Court in its favor and against Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, for rescission of the AeroVanti Rosenfeld Top Gun Agreement *ab initio*, the return of the $75,000.00 previously paid by Plaintiff to AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, plus applicable interest on the

funds from March 31, 2023 through and including August 13, 2023, and to enter such other orders and/or grant such further relief as this Honorable Court deems just and proper under the circumstances.

### COUNT V - AIDING AND ABETTING FRAUD[8]
### (PLAINTIFF against RICKETTS)

Plaintiff, sues Defendant, RICKETTS, and allege that:

102.  This is an action for damages that are within the jurisdiction of this court.

103.  Plaintiff re-alleges and incorporates by reference paragraphs 1-32 as if fully set forth herein.

104.  As specifically described herein, Defendant, BRITTON-HARR, and Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made false and fraudulent representations to Plaintiff in connection with the "Top Gun" Membership.

105.  Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, had knowledge that false and fraudulent representations were made to Plaintiff in order to induce Plaintiff to purchase the "Top Gun" Membership and further enter into the respective AeroVanti Top Gun Agreement.

106.  Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS,

---

[8] Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC, 904 F.3d 1197, 1214 (11th Cir. 2018).

knowingly aided and abetted in false and fraudulent representations having been made to Plaintiff.

107.    Moreover, Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, helped solicit, prepare the marketing materials that were provided, and further advertise the "Top Gun" Membership to potential new members, including Plaintiff, in order to induce Plaintiff to purchase a "Top Gun" Membership and further enter into the AeroVanti Top Gun Agreement.

108.    Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, also assisted in the inducement of the purchase of the "Top Gun" Membership by orchestrating the appearance of Defendant, AEROVANTI, and its affiliated network of ALTER-EGO DEFENDANTS, maintaining a significant "fleet" of aircrafts, when, in reality, the "fleet" of aircrafts was simply a facade.

109.    As a direct and proximate result of the actions of Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, Plaintiff was damaged and continues to suffer damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant, RICKETTS, for damages, costs, interest, prejudgment interest, and such other relief as the Court deems proper.

## COUNT VI - NEGLIGENT MISREPRESENTATION[9]

### (PLAINTIFF against RICKETTS)

Plaintiff, sues Defendant, RICKETTS, and allege that:

110.   This is an action for damages that are within the jurisdiction of this court.

111.   Plaintiff re-alleges and incorporates by reference paragraphs 1-32 as if fully set forth herein.

112.   At all times relevant hereto, Defendant, RICKETTS, was, and upon information and belief, currently still is the Vice President of Sales for Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS.

113.   Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, solicited new potential members, including Plaintiff, to purchase a "Top Gun" Membership.

114.   Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that Defendant, AEROVANTI, maintained a significant number of aircrafts in its "fleet" in order to satisfy the demands of "top gun" members, and further, that purchase of a "Top Gun" Membership would provide Plaintiff with priority access to private flights on aircrafts owned or leased by Defendant, AEROVANTI.

---

[9] *Rogers v. Cisco Sys., Inc.*, 268 F.Supp.2d 1305, 1312 (N.D. Fla. 2003)

115.   Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase a "Top Gun" Membership and enter into the AeroVanti Top Gun Agreement.

116. Plaintiff, in justifiable reliance upon the representations made by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase a "Top Gun" Membership, and enter into the AeroVanti Top Gun Agreement.

117.   The representations made to Plaintiff by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, were false when they were made to Plaintiff.

118.   Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, knew or should have known that these representations were false and fraudulent when they were made to Plaintiff.

119.   The false and fraudulent representations made by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, were material to

Plaintiff's decision to purchase a "Top Gun" Membership, and enter into the AeroVanti Top Gun Agreement.

120.  If  Plaintiff had known that Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, did not maintain a significant number of aircrafts in its "fleet" in order to satisfy the demands of "top gun" members, as was represented by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, to Plaintiff, then Plaintiff would not have purchased a "Top Gun" Membership, nor entered into the AeroVanti Top Gun Agreement.

121. As  a  direct  and  proximate  result  of  the  false  and  fraudulent representations made to Plaintiff by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network  of  ALTER-EGO  DEFENDANTS,  Plaintiff  has  suffered  damages,  and continues to suffer damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant, RICKETTS, for damages, costs, interest, prejudgment interest, and such other relief as the Court deems proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial as to all issues so triable.


By: ___**/s/ Ryan C. Wagner**_____

Ryan C. Wagner, Esq.
Florida Bar No. 109313
**WLG FIRM, PLLC**
Attorneys for Plaintiff
110 SE 6th Street, Suite 1700
Fort Lauderdale, FL 33301
Tel: (954) 271-2424
Email: ryan@WLGFIRM.com

## **VERIFICATION OF COMPLAINT**

I, PETER ROSENFELD, am a resident of the State of Florida, and am the Plaintiff in the above captioned action. I have read the foregoing Verified Complaint and pursuant to 28 U.S.C.§ 1746(2) declare under penalty of perjury that the foregoing factual averments are true and correct to the best of my knowledge and belief.

By: _____

PETER ROSENFELD, as *Plaintiff*

State of FLORIDA          )
County of BROWARD     )

I HEREBY CERTIFY that on this day, before me, an officer duly qualified to take acknowledgments, personally appeared PETER ROSENFELD, and who is personally known to me. WITNESS my hand and official seal in the County and State last aforesaid this August 13, 2023.

_____                    _____
Name of Notary Public                                                Signature of Notary Public

My Commission Expires:

Notary Public State of Florida
Ryan C Wagner
My Commission GG 915046
Expires 09/19/2023